[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO MODIFY ALIMONY AND CHILD SUPPORT
The defendant husband has moved to modify orders for alimony and child support of January 13, 1999, which ordered the husband to pay $1,150 as combined alimony and child support pendente lite. At the time those orders were made, the husband's financial affidavit showed gross income of $2083 per week ($108,316 annually) net of business overhead, and net income of $1379. The wife's financial affidavit in January showed gross earnings of $352 per week ($18,304 annually) and $289 weekly. The court's CT Page 11441 orders were based in part on tax considerations.
The husband cites two factual supports for his position that the support orders should be reduced. First, he contends that the wife is earning substantially less than her earning capacity, which he sets at $35,000 per year. Secondly, he contends that with the termination of his full time employment on March 31, 1999, his own eamings fell dramatically. He now reports gross eamings of $945 per week and net earnings of $644 per week.
The wife had worked in the past at a salary which, if annualized, would equal $35,000 per year. In her present job, she is a paraprofessional in a public school system, and summer work is not available to her. She has interviewed for two different jobs in the same system which would allow her to work throughout the year. If she is successful, she will earn between $25,000 and $27,000 per year. There is no evidence that a $35,000 per year job is available to her, but she clearly has an earning capacity greater than she is presently earning. The court finds that her earning capacity is $25,000 annually at present. In addition, the court finds that her earning capacity will continue to grow.
The husband's income is at best a moving target. He submitted a financial affidavit in December 1998 which stated his income at $2798 per week ($145,500 annually). His financial affidavit prepared a month later for the hearing at which the orders were made showed an annual income of $108,316. Both of those documents were submitted at a time when, according to his testimony at this hearing, he was earning $3,750 per week ($185,000 annualized) plus a car and housing allowance. There is some understandable uncertainty in his income because of the nature of his work, but his financial affidavits in December and January were misleading.
The husband is a self-employed management consultant involved in providing sales training. For nine months, until March 31, 1999, he worked in-house for in Florida for Genoa, where he was vice president of sales under the contract previously discussed.[1] At all times including the hearing in January, 1999, it was anticipated that his work with Genca would conclude. According to his credible testimony on this issue, a management consultant can typically bill clients for only two and one-half to three days per week, spending the balance of the week preparing, marketing, or traveling. His billing rate is currently $800 per day, so if he were able to find sufficient work to create billable time for those days, his gross before typical CT Page 11442 deductions and business expenses would be $2000 to $2400 per week, or $104,000 to $124,000 per year. However, he has been unable to work at that level since leaving Genca. His work schedule has been one to two days per week. During a thirteen week period after leaving Genoa, he worked sixteen days. He testified credibly that the situation will get better in three to nine months.
There are two reasons for his present lack of work. During his time at Genca, he was unable to either maintain or service contracts with his customer base, and needs time to reestablish those relationships. In addition, however, he has been less than aggressive in seeking such work. He knew, for example, in the beginning of March that his work at Genoa would end by the end of the month, and testified that he immediately began to work on new client development. His "partial contact list" reveals only two contacts during March. His diary reveals very little activity devoted to either billable or non-billable tasks for nearly half of the available work days during June. However, the husband testified that he anticipated grossing $15,000 to $20,000 per quarter beginning in the third quarter of 1999, which was underway at the time of the hearing. The court finds that his present earning capacity is $1300 per week The court will not base its present orders on the income the husband anticipates during the 2000 calendar year, although the husband credibly testified that his income would begin to reflect the two and one-half to three day national average for billable hours by then.
The court has taken into account the requirements of Sections46b-82, 83, and 84 of the Connecticut General Statutes together with the evidence. The court orders that the husband shall pay the sum of $750 per week in unallocated alimony and child support pendente lite. This order is retroactive to July 2, 1999. If the husband has been current in his support during that period he will have paid $2400 more than the order the court has rendered, based on the retroactive reduction. It would be inequitable to require the wife and children to absorb the cost of that overpayment all at once by having support payments suspended for nearly a month. The court will further order that the $750 per week can be reduced by $50 per week until any overpayments have been eliminated. The court orders that the husband shall provide the wife with copies of his business invoices for each quarter commencing with the third quarter, 1999, within thirty days of the end of each quarter. All other orders will remain in effect. CT Page 11443
Orders will enter accordingly.
BY THE COURT, Gruendel, J.